*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A15-0987**

State of Minnesota,
Respondent,

vs.

Scott Richard Seelye,
Appellant.

**Filed May 23, 2016**
**Affirmed in part, reversed in part, and remanded**
**Reilly, Judge**

Cass County District Court
File No. 11-CR-12-1838

Lori Swanson, Attorney General, James B. Early, Assistant Attorney General, St. Paul, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Rachel F. Bond, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Reilly, Presiding Judge; Connolly, Judge; and Stauber, Judge.

**U N P U B L I S H E D   O P I N I O N**

**REILLY**, Judge

Appellant challenges his convictions of terroristic threats and second-degree assault, arguing that (1) the district court deprived him of his constitutional right to self-representation; (2) the chief judge of district court abused its discretion by declining to

remove the district court judge presiding over the case; (3) the district court abused its discretion by allowing the state to amend the complaint after the close of evidence; (4) the case should be remanded for resentencing; and (5) the district court violated his right to a speedy trial and deprived him of his Sixth Amendment right to counsel. We reverse and remand for resentencing but affirm in all other respects.

**FACTS**

In August 2012, M.B., C.M., and C.A. were walking along a highway in Cass County when appellant Scott Richard Seelye drove up behind them in his car. Appellant attempted to speak with the group several times and invited the women, M.B. and C.A., into his car. The women refused appellant's offer and continued walking with C.M. Appellant stepped out of his car and began yelling homophobic slurs at C.M. Appellant returned to his car, steered his car toward the group, and drove up behind C.M. C.M. ran off the road in an attempt to avoid appellant, but appellant struck C.M. with his car, causing C.M. to fall to the ground with appellant's car on top of him. C.M. suffered injuries to his legs as a result of the incident. The state subsequently charged appellant by amended complaint with attempted first-degree premeditated murder, attempted first-degree intentional felony murder, three counts of second-degree assault with a dangerous weapon against each of the three victims, and terroristic threats.

This case has a lengthy procedural history involving multiple judicial officers, numerous attempts to remove each judge, several continuances, nine separate appeals all of which have been denied at the appellate court level, and appellant's hunger strike, resulting in long delays between the charging date and the jury trial. The case ultimately

proceeded to trial in January 2015. The jury found appellant guilty of second-degree assault with a dangerous weapon (fear) against C.M. and terroristic threats, but acquitted appellant of the remaining charges. The district court sentenced appellant to a 36-month prison term for terroristic threats, concurrent to a 68-month prison term for second-degree assault with a dangerous weapon. This appeal followed.

## DECISION

Appellant raises several issues on appeal. First, appellant argues that the district court erred in ruling that he relinquished his constitutional right to self-representation. Second, appellant claims that the district court judge should have been disqualified. Third, we consider whether the district court abused its discretion by permitting the state to amend the complaint after the close of evidence. Fourth, we review the record for errors in sentencing. Lastly, appellant raises additional arguments in his pro se brief that the district court violated his right to a speedy trial and denied him effective assistance of counsel. We address each argument in turn.

## I.

Appellant argues he is entitled to a new trial because the district court erred in determining that he forfeited his right to self-representation. A defendant has a constitutional right to represent himself in a state criminal proceeding. *State v. Thornblad*, 513 N.W.2d 260, 262 (Minn. App. 1994) (citing *Faretta v. California*, 422 U.S. 806, 836, 95 S. Ct. 2525, 2541 (1975)). A criminal defendant may represent himself if the district court determines that the defendant's request is "clear, unequivocal, and timely," and if the defendant "knowingly and intelligently waive[d] his right to counsel." *State v. Richards*,

3

456 N.W.2d 260, 263 (Minn. 1990) (citation omitted). However, the right to self-representation is not absolute. *Faretta*, 422 U.S. at 835 n.46, 95 S. Ct. 2525.

Constitutional rights may be relinquished in one of three ways: (1) waiver, (2) waiver-by-conduct, and (3) forfeiture. *State v. Jones*, 772 N.W.2d 496, 504 (Minn. 2009). Waiver is defined as the voluntary relinquishment of a known right, and must be knowing, intelligent, and voluntary. *Id.* at 504. The district court must "fully advise" the defendant of the nature of the charges, the possible punishment, mitigating circumstances, and the "facts essential to a broad understanding of the consequences of the waiver" of a constitutional right. *Id.* (citations omitted). Waiver-by-conduct occurs when a defendant "voluntarily engag[es] in misconduct." *Id.* at 505. Waiver-by-conduct also requires the district court to warn the defendant about the consequences of his conduct. *Id.* Finally, forfeiture occurs when a defendant who engages in extremely serious conduct may be said to have forfeited his rights. *Id.*; *State v. Beaulieu*, 859 N.W.2d 275, 279 (Minn. 2015), *cert. denied*, 136 S. Ct. 92 (2015) (defining forfeiture). Unlike the first two categories, forfeiture does not require the district court to conduct a waiver colloquy with the defendant. *Jones*, 772 N.W.2d at 505. *See also United States v. Goldberg*, 67 F.3d 1092, 1100 (3d Cir. 1995) (stating that unlike waiver, "forfeiture results in the loss of a right regardless of the defendant's knowledge thereof and irrespective of whether the defendant intended to relinquish the right"). Instead, a district court may terminate a self-represented litigant if he "deliberately engage[s] in serious and obstructionist misconduct," "abuse[s] the dignity of the courtroom," *Faretta*, 422 U.S. at 834 n.46, or where self-representation unduly delays or disrupts trial, *State v. Paige*, 765 N.W.2d 134, 139-40 (Minn. App. 2009). We

4

review a district court's forfeiture determination for clear error. *State v. Worthy*, 583 N.W.2d 270, 276 (Minn. 1998).

The district court detailed appellant's numerous tactics designed to delay trial and determined that appellant's conduct constituted a forfeiture of his right to self-representation. The district court noted that appellant's "multiple motions to remove for cause and subsequent appeals have delayed the case substantially and prevented the Court from addressing the issues surrounding the charges against [appellant]" and found that "instead of attempting to defend himself and address the issues in this case, it is [appellant's] clear intent to continue to accuse and disparage the Court of impropriety and felony level offenses all in an attempt to delay the proceedings." The district court also addressed appellant's courtroom demeanor and the "multiple occasions" appellant "exhibited a lack of decorum by slandering the Court, assistant county prosecutor, advisory council, and [the] court reporter," often resulting in appellant's removal from the courtroom, causing further delay.

Appellant concedes that he was disruptive and argumentative in the courtroom but claims his conduct did not "abuse the dignity of the courtroom" to the extent that it constitutes a forfeiture of his right to self-representation. We disagree. Whether the forfeiture of a constitutional right is valid depends upon the particular facts and circumstances of the case. *Worthy*, 583 N.W.2d at 275. Our thorough review of the record reveals that appellant's disruptive conduct resulted in a 22-month delay between the charging document and trial. During that time, appellant attempted to remove each judicial officer assigned to his case, filed nine unsuccessful appeals, disrupted the courtroom

5

proceedings to such a degree that he was removed from the courtroom, and went on a hunger strike.[1]  A defendant may not use the right to self-representation "as a tactic for delay, for disruption, for distortion of the system, or for manipulation of the trial process." *United States v. Mosley*, 607 F.3d 555, 558 (8th Cir. 2010) (citations omitted).  We find no error in the district court's conclusion that appellant's relinquishment was valid.

Appellant argues that the district court failed to warn him that his obstructionist conduct could lead to a forfeiture of his right to self-representation.  Appellant does not cite to any legal authority to support his argument that the district court had an affirmative duty to warn defendant that his delay tactics could be construed as waiver of his right to represent himself, and we deem this argument waived.  *See State v. Butcher*, 563 N.W.2d 776, 780 (Minn. App. 1997) (stating that issues not adequately briefed on appeal are waived), *review denied* (Minn. Aug. 5, 1997).  And *Jones* instructs that forfeiture does not impose a duty-to-warn requirement upon the district court.  772 N.W.2d at 505.  Forfeiture is reserved for "severe misconduct, when other efforts to remedy the situation have failed." *Id.*  Given the facts of this case, it was evident that appellant's behavior was intended to cause delay and disruption of the proceedings and forfeiture was appropriate.  Appellant is therefore not entitled to a new trial on this basis.

---

[1] We note that it is difficult, if not impossible, to represent one's self, if one has been removed from the courtroom.

## II.

Appellant challenges the chief judge's order denying appellant's motion to remove the assigned district court judge for cause. Because this court previously determined that appellant's removal motion had no merit, *State v. Seelye*, No. A14-0298 (Minn. App. Mar. 6, 2014) (order op.), appellant is foreclosed from seeking the same relief now under the law-of-the-case doctrine. *See Townsend v. State*, 867 N.W.2d 497, 501 (Minn. 2015) (stating that the law-of-the-case doctrine bars issues that have previously been decided in the same case). "Law-of-the-case doctrine commonly applies to issues decided in earlier stages of the same case." *State v. Miller*, 849 N.W.2d 94, 98 (Minn. App. 2014) (citation omitted). The law-of-the-case doctrine provides that "when a court decides upon a rule of law, that decision should continue to govern the *same issues* in subsequent stages in the same case." *Id*. (quoting *Arizona v. California*, 460 U.S. 605, 618, 103 S. Ct. 1382, 1391 (1983) (emphasis in original)). Here, appellant asserts the same arguments that a special term panel of this court previously found unconvincing. This court already "thoroughly reviewed" the record and was "not persuaded" that the lower court's removal decision was erroneous. There is no basis to reconsider appellant's argument now.

## III.

Appellant argues he is entitled to a new trial because the district court permitted the state to amend the complaint after the close of evidence. "[T]he liberality to be shown in the allowance of amendments to pleadings depends in part upon the stage of the action and in a great measure upon the facts and circumstance of the particular case." *Bebo v. Delander*, 632 N.W.2d 732, 741 (Minn. App. 2001), *review denied* (Minn. Oct. 16, 2001).

7

Minnesota law permits the district court to amend a criminal complaint any time before a verdict "if no additional or different offense is charged and if the defendant's substantial rights are not prejudiced." Minn. R. Crim. P. 17.05. "A 'different offense' is charged if an amendment affects an 'essential element' of the charged offense." *State v. Guerra*, 562 N.W.2d 10, 13 (Minn. App. 1997) (citation omitted). The purpose of rule 17.05 is to prevent jury confusion and to ensure that the defendant is provided timely notice and an opportunity to prepare a defense. *Id*. at 13-14. We review a district court's decision to allow an amendment to a complaint for an abuse of discretion. *State v. Ostrem*, 535 N.W.2d 916, 922 (Minn. 1995).

The state charged appellant with three counts of second-degree assault with a dangerous weapon against M.B., C.M., and C.A. Count III alleged that: "[appellant] . . . did assault another with a dangerous weapon, namely: [C.M.]" in violation of Minnesota Statutes section 609.222, subdivision 1. Following the close of evidence, the state moved to amend the complaint by replacing count III with three separate counts charging assault (fear), assault (harm), and attempted assault. *See* Minn. Stat. § 609.02, subd. 10 (2014) (defining assault). The district court granted the motion over appellant's objection and instructed the jury on the definitions of assault (fear), assault (harm), and attempted assault.

Appellant argues that the amendment hindered his ability to prepare an adequate defense. We disagree because no different offense was charged by allowing the amendment. Section 609.222 provides that "[w]hoever assaults another with a dangerous weapon may be sentenced to imprisonment for not more than seven years or to payment of a fine . . . or both." Minn. Stat. § 609.222, subd. 1 (2014). "Assault" is defined as "(1) an

8

act done with intent to cause fear in another of immediate bodily harm or death; or (2) the intentional infliction of or attempt to inflict bodily harm upon another." Minn. Stat. § 609.02, subd. 10. The statute provides three alternative ways a defendant can commit assault. *See State v. Fleck*, 810 N.W.2d 303, 308 (Minn. 2012) (characterizing subdivision 1 as "assault-fear" and subdivision 2 as "assault-harm" and attempted assault). Therefore, instructing the jury on assault (fear), assault (harm), and attempted assault did not "affect an 'essential element' of the charged offense." *Guerra*, 562 N.W.2d at 13.

Further, we conclude that appellant was not prejudiced by the amendment. The amendment did not "confus[e] the jury, violat[e] due process notions of timely notice, [or] adversely affect[] the [defendant's] trial tactics." *Guerra*, 562 N.W.2d at 13 (quotation omitted). Rule 17.05 is designed to "provide the defendant with notice and an opportunity to prepare his or her defense." *State v. Gisege*, 561 N.W.2d 152, 157 (Minn. 1997). The charging document provided appellant with adequate notice of the charges against him, specifically, that he assaulted C.M. The amendment did not adversely affect appellant's trial tactics or confuse the jury and we therefore conclude that the district court did not abuse its discretion by granting an amendment under rule 17.05.

**IV.**

Appellant seeks a remand for resentencing on the ground that the district court erroneously sentenced him on both terroristic threats and assault, and the state agrees. Generally, "if a person's conduct constitutes more than one offense under the laws of this state, the person may be punished for only one of the offenses and a conviction or acquittal of any one of them is a bar to prosecution for any other of them." Minn. Stat. § 609.035

9

(2012). This rule does not "immunize" a defendant from "the consequences of separate crimes intentionally committed in a single episode against more than one individual," *State v. Ferguson*, 808 N.W.2d 586, 589 (Minn. 2012), or where multiple sentences do not unfairly exaggerate the criminality of the defendant's conduct, *State v. Schmidt*, 612 N.W.2d 871, 878 (Minn. 2000). Whether an offense is subject to multiple sentences is a question of law subject to de novo review. *Ferguson*, 808 N.W.2d at 590.

Here, remand is appropriate because appellant's behavior arose from a single behavioral incident. "Whether two acts are part of a single course of conduct depends on the facts of the particular case." *State v. Bakken*, 871 N.W.2d 418, 425 (Minn. App. 2015) (citing *State v. Hawkins*, 511 N.W.2d 9, 13 (Minn. 1994)). The reviewing court considers "the factors of [a unity of] time and place and whether a defendant is motivated by a single criminal objective." *Id*. (citing *State v. Bookwalter*, 541 N.W.2d 290, 294 (Minn. 1995)). The parties agree that appellant's conduct occurred at the same time, in the same vicinity, and encompassed a single criminal objective, namely, to harass and threaten C.M. We agree and reverse and remand to the district court for resentencing on the second-degree assault conviction, which carries the higher severity level. *See* Minn. Sent. Guidelines cmt. 2.B.101 ("In cases of multiple offenses occurring in a single behavioral incident in which state law prohibits the offender being sentenced on more than one offense, only the offense at the highest severity level should be considered.").

## V.

Appellant raises two additional arguments in his supplemental pro se brief. First, appellant argues that his right to a speedy trial was violated. Second, appellant argues that

the district court violated his Sixth Amendment right to counsel. Appellant fails to cite to relevant facts or legal authority to support these arguments and we consider them waived. *See State v. Manley*, 664 N.W.2d 275, 286 (Minn. 2003) (waiving arguments raised in supplemental pro se brief that were "unsupported by any facts in the record" and contained "no citation to any relevant legal authority").

**Affirmed in part, reversed in part, and remanded.**