**STATE of Minnesota, Respondent,**

v.

**Steven Demetrius DANIELS, a/k/a Steven Demetrius Daniel, Appellant.**

**No. A08–0504.**

Court of Appeals of Minnesota.

May 26, 2009.

Lori Swanson, Attorney General, John S. Garry, Assistant Attorney General, St. Paul and Janelle P. Kendall, Stearns County Attorney, St. Cloud, for respondent.

Lawrence Hammerling, Chief Appellate Public Defender, Davi E. Axelson, Assistant Public Defender, St. Paul, for appellant.

Considered and decided by SHUMAKER, Presiding Judge; STONEBURNER, Judge; and COLLINS, Judge.*

## OPINION

SHUMAKER, Judge.

In this appeal, appellant challenges his aggravated robbery and first-degree criminal-sexual-conduct convictions, arguing that these charges were improperly venued in Stearns County because no element of either crime occurred in Stearns County. Appellant also argues that the district court abused its discretion by imposing a

consecutive sentence disproportionate to his crimes without finding severe aggravating circumstances to justify the sentence. We affirm.

## FACTS

After appellant Steven Demetrius Daniels kidnapped, repeatedly beat, robbed, and raped V.D.H. during a 4½-hour car ride from Stearns County to Hennepin County and back, the state charged him in Stearns County with kidnapping, aggravated robbery, and criminal sexual conduct. He agreed to a *Lothenbach* trial. The district court found him guilty of all charges and imposed consecutive prison sentences. Daniels claims on appeal that Stearns County was an improper venue for the charges of aggravated robbery and criminal sexual conduct, and that his sentence was not supported by aggravating circumstances.

For the trial, the parties stipulated that the district court could consider two groups of evidence, called the "*Lothenbach* Packet"—pertaining to the merits of the charges—and the "*Blakely* Packet"—pertaining to sentencing issues. From that evidence, the district court made findings of fact. Daniels does not dispute any of the findings.

The essential facts for purposes of this appeal show that, on a December evening in 2006, V.D.H. began drinking alcohol at a friend's house and then drank at several bars in St. Cloud during a "pub crawl." By late in the night, V.D.H. was intoxicated.

Daniels became aware of V.D.H.'s intoxicated condition, and he accosted her as she went to her car to go home. He obtained her keys, put her into the car, locked the door, and got into the driver's seat. Dan-

---

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

iels then struck V.D.H. in the face hard enough to cause immediate swelling and temporary loss of sight. He next choked her to the point that she became nauseated and felt as though she would pass out. When she regained awareness, she noticed that the car was moving fast and that Daniels was talking about getting money. V.D.H. told him that she was a college student and that her money was in her bank account.

Daniels drove to an A.T.M. in Minneapolis. During the trip, he struck and beat V.D.H. each time she said or did anything that displeased him. At the A.T.M., Daniels tied V.D.H. with the seat belt, and she gave him her access code. When it did not work, he beat her. He tried the code a second time and was able to withdraw $300 from the account.

After Daniels obtained the money, he drove a short distance, and then he ordered V.D.H. to take off her pants. Fearing that he would beat her again if she did not comply, she did so, and Daniels had intercourse with her. Daniels then drove the car back to St. Cloud, parked it, looked inside V.D.H.'s wallet and car for anything of value and left on foot. V.D.H. called 911.

## ISSUES

1. Appellant physically assaulted and kidnapped a woman in Stearns County; drove with her in her car to Hennepin County; continued to physically assault her during the trip; robbed her in Hennepin County; and raped her in an undetermined place other than Stearns County on a return trip to that county.

Was Stearns County a proper venue for the charges of robbery and rape?

2. The district court sentenced appellant on the kidnapping charge to a period that was an undisputedly proper duration-

al departure from the presumptive sentence. The district court also properly imposed sentences for robbery and criminal sexual conduct, but ordered that the sentence for kidnapping was to be served consecutively to those for robbery and criminal sexual conduct. The district court did not find aggravating circumstances for the consecutive sentence.

Was the consecutive kidnapping sentence a departure from the sentencing guidelines which required a finding of aggravating circumstances?

3. Was Daniels's sentence an abuse of discretion where the district court imposed an upward durational departure and consecutive sentences in the absence of a finding of severe aggravating factors?

## ANALYSIS

### I.

Daniels first challenges the propriety of Stearns County as the venue for the robbery and rape charges. The undisputed evidence shows that Daniels kidnapped V.D.H. in Stearns County and physically assaulted her there. He continued to confine her and to beat her repeatedly during the drive from Stearns to Hennepin County to get her to say and do what he desired. In Hennepin County, Daniels beat V.D.H. to obtain her A.T.M. access code and then withdrew money from her account. Shortly after the robbery, he ordered V.D.H. to remove her pants. She complied out of fear of being beaten, and he raped her. It is not clear where the rape occurred, but its timing in relation to the robbery suggests that it most likely happened in Hennepin County and definitely did not happen in Stearns County.

■ At trial, Daniels challenged venue respecting the robbery and the rape charges. The district court denied the challenge. The district court's determina-

tion of a venue challenge raises a question of law that we review de novo. *State v. Wolf*, 592 N.W.2d 866, 869 (Minn.App. 1999), *aff'd*, 605 N.W.2d 381 (Minn.2000).

■ Although "venue" refers commonly to a geographical place, in criminal prosecutions, venue also implicates jurisdiction because proper venue is a place in which a court with subject-matter jurisdiction may exercise its power of adjudicating a criminal charge. *See State v. Smith*, 421 N.W.2d 315, 318–19 (Minn.1988) (discussing how location where crime was committed determines a court's power to try and convict a criminal defendant). Proper venue is both a legal requirement and a right enjoyed by the accused under the federal and state constitutions. U.S. Const. amend. VI; Minn. Const. art. I, § 6. The Minnesota Constitution provides that a criminal defendant has a right to be tried in "the county or district wherein the crime shall have been committed." Minn. Const. art. I, § 6.

■ A literal reading of Minnesota's constitutional venue provision suggests that there is a single county or district in which venue is proper. But the legislature and the courts have read the provision more broadly. Minn.Stat. § 627.01, subd. 1 (2006), reflects the fundamental constitutional rule by providing that venue is proper "in the county where the offense was committed." But the statute then defines such county to include "any county where any element of the offense was committed...." Minn.Stat. § 627.01, subd. 2 (2006). Furthermore, when a crime is committed

> on a public or private conveyance, and it is doubtful in which county the offense occurred, the case may be prosecuted and tried in any county through which the conveyance traveled in the course of the trip during which the offense was

committed, or in the county where such trip began or terminated.

Minn. R.Crim. P. 24.02, subd. 1. When a crime implicates more than one county, the constitution does not require prosecution in "a single exclusive venue." *State v. Krejci*, 458 N.W.2d 407, 410 (Minn.1990) (quotation omitted).

■ Daniels argues that the crime of aggravated robbery occurred entirely within Hennepin County and, therefore, venue in Stearns County was improper. He also correctly notes that venue must be supported by probable cause and ultimately proved beyond a reasonable doubt to support a conviction. *State v. Larsen*, 442 N.W.2d 840, 842 (Minn.App.1989) (citations omitted).

The state charged Daniels with aggravated robbery in the first degree under Minn.Stat. § 609.245, subd. 1 (2006). That charge requires proof not only of the unlawful taking of another's property but also the infliction of bodily harm during the commission of the robbery. *Id.* "Bodily harm" includes physical pain or injury. Minn.Stat. § 609.02, subd. 7 (2006). Daniels points to the stipulated evidence and argues that all elements of this crime began and ended in Hennepin County because that is where he beat V.D.H. and that is where he took her money through the use of her A.T.M. access code.

Similarly, he argues that the rape occurred entirely within Hennepin County. He was charged with criminal sexual conduct in the first degree, which requires proof of sexual penetration as a result of the actor's infliction of personal injury on the victim or the use of force or coercion to accomplish the penetration. Minn.Stat. § 609.342, subd. 1(e)(i) (2006). Daniels points out that the timing of the rape was such that he could not yet have been outside Hennepin County.

Thus, as to both the robbery and rape, Daniels contends that no element of either crime occurred in Stearns County.

■ In *State v. Simion,* 745 N.W.2d 830 (Minn.2008), the supreme court addressed the application of the constitutional venue requirement in the context of interstate subject-matter jurisdiction. Acknowledging that Minnesota has jurisdiction over, and is a proper place for the prosecution of, any crime committed in whole or in part within the state's territorial boundaries, the supreme court held that the crimes of which the appellant was convicted occurred entirely in Wisconsin, even though the victim experienced economic harm in Minnesota. *Id.* at 839. Therefore, Minnesota lacked jurisdiction over the case and was not the proper place for the prosecution.

In reaching its decision, the supreme court relied on Minn. Const. article I, § 6, the same provision on which Daniels relies in his challenge. The court explained that the proper test for determining the place where a court has power to adjudicate a criminal charge is the "operative event test":

> The test that emerges from our precedent to determine whether the district court had jurisdiction asks whether "some operative event, a triggering event" for the crime occurred in Minnesota. We said in *Smith* that "[t]he event needed, as required by the Minnesota and United States Constitutions, is that some part of the crime charged must be 'committed' within the jurisdiction."

*Id.* at 838–39.

The court elaborated further, noting the critical factor of relationship in applying the "operative event" test. Some "criminal behavior relevant to the . . . charge" as either part of the crime or "related to an element thereof" must have occurred in the place selected for the prosecution in order for the adjudicative power of the court to attach. *Id.* at 839. Because the supreme court's application of Minn. Const. art. I, § 6, in *Simion* was tied to the place of jurisdiction, the same analysis applies within the state when considering the proper place, or venue, for a criminal prosecution.

Under the *Simion* analysis, there are various ways of framing the venue question respecting Daniels's robbery and rape charges: (1) Did some "operative event" of those crimes occur in Stearns County? (2) Was there a "triggering event" in Stearns County that related to those crimes? (3) Did Daniels engage in conduct in Stearns County that was "part of" those crimes? (4) Was Daniels's conduct in Stearns County "related to an element" of each of those crimes?

No matter how the question is framed, the stipulated facts reveal that Stearns County was a proper venue for the robbery and rape prosecutions as well as for the prosecution of kidnapping. Daniels's confinement of V.D.H. in Stearns County was an operative or triggering event that made the robbery and rape possible. Daniels's physical assaults that began in Stearns County also acted as operative or triggering events of the robbery and the rape, for the assaults created the coercive circumstances that remained throughout the entire ordeal and that caused V.D.H. to comply against her will with the taking of her money and the sexual assault. These two acts of Daniels's criminal conduct in Stearns County—confinement and physical assault—set in operation, triggered, related to, and became a part of the facilitation of the robbery and rape outside of Stearns County, thus satisfying the "operative event" test. Therefore, we hold that Stearns County was a proper venue for the

prosecution of all charges against Daniels and that the district court did not err in denying Daniels's venue challenge.

## II.

■ Daniels's second challenge is to his sentences. Upon a finding that V.D.H. was vulnerable because of her impaired condition and that Daniels treated her with particular cruelty, the district court doubled the presumptive durational guidelines sentence for kidnapping and imposed an executed sentence of 42 months. In his brief, Daniels concedes the propriety of this sentence, stating that "the district court's findings justified the durational departure."

■ The court ordered that the kidnapping sentence was to be served consecutively to the sentences for the aggravated robbery and the criminal sexual conduct. Daniels concedes in his brief that "the district court was permitted to sentence [him] to consecutive sentences for multiple offenses against the same victim ... [under] Minn.Stat. § 609.035, subd. 6 (2006) and Minn.Stat. § 609.251 (2006)...." But, he contends, the court was not permitted to impose both a durational departure and consecutive sentences without finding "severe aggravating circumstances," a finding the court did not make. Without such a basis for the sentences imposed, Daniels contends that his sentences are disproportionate to his crimes and unfairly exaggerate the criminality of his conduct. The district court enjoys discretion in sentencing and will be reversed only for an abuse of that discretion. *State v. Kindem*, 313 N.W.2d 6, 7 (Minn.1981). "When the district court has discretion to impose consecutive sentences, we will uphold the sentences unless they are disproportionate to the offense or unfairly exaggerate[ ] the criminality of the defendant's conduct." *State v. Suhon*, 742 N.W.2d 16,

24 (Minn.App.2007) (alteration in original) (quotation omitted).

Daniels relies on *State v. Hearn*, 647 N.W.2d 27, 33 (Minn.App.2002), *review granted* (Minn. Sept. 17, 2002), *stay vacated* (Minn. Mar. 30, 2004); *State v. Jackson*, 596 N.W.2d 262, 267 (Minn.App.1999), *review denied* (Minn. Aug. 25, 1999); and *State v. Halvorson*, 506 N.W.2d 331, 339–40 (Minn.App.1993), for the proposition that, when there has been a durational departure as to a crime that was part of a single behavioral incident, consecutive sentencing of other crimes in that incident is also a departure and must be supported by "severe" aggravating circumstances. He also relies on comment II.F.04 to the 2006 sentencing guidelines, which states that aggravating circumstances must exist to justify a consecutive sentence imposed along with an upward durational departure in circumstances involving one victim and a single behavioral incident.

*Halvorson, Jackson,* and the guidelines comment support Daniels's contention but they do not represent the law under which his consecutive sentences were imposed. The district court relied on Minn.Stat. § 609.035, subd. 6 (2006)—amended in 2000—in sentencing Daniels, and that statute expressly provides that Daniels's consecutive sentencing is not a departure from the sentencing guidelines:

> [A] prosecution or conviction for committing a violation of sections 609.342 to 609.345 with force or violence is not a bar to ... punishment for any other crime committed by the defendant as part of the same conduct. If ... the court imposes consecutive sentences for the crimes, the consecutive sentences are not a departure from the Sentencing Guidelines.

Minn.Stat. § 609.035, subd. 6. 2000 Minn. Laws ch. 311, art. 4, § 1 at 211.

Daniels was convicted of criminal sexual conduct in the first degree with force in

violation of Minn.Stat. § 609.342, subd. 1(e)(i). Through Minn.Stat. § 609.035, subd. 6, the legislature has expressed its intention to allow cumulative punishment for certain crimes, including the sex offense of which Daniels was convicted. *State v. Jones,* 745 N.W.2d 845, 850 (Minn. 2008). The supreme court has noted that the sentencing guidelines "have also been amended to embody" this legislative amendment. *State v. Smith,* 669 N.W.2d 19, 33 n. 1 (Minn.2003), *overruled on other grounds by State v. Leake,* 699 N.W.2d 312 (Minn.2005). The sentencing guidelines now provide that "[e]xcept when consecutive sentences are presumptive, consecutive sentences are permissive (may be given without departure)" only in certain cases, including a conviction of criminal sexual conduct in the first degree with force as defined in Minn.Stat. § 609.342 through 609.345. Minn. Sent. Guidelines II. F.2; Minn. Sent. Guidelines VI.

Thus, we hold that the district court did not abuse its discretion in the sentences it imposed on Daniels.

## DECISION

Because the evidence establishes that an "operative event" for the aggravated robbery and criminal sexual conduct occurred when Daniels forced V.D.H. into her car and beat her while in Stearns County, venue in Stearns County was proper and Daniels's convictions are affirmed.

Because the imposition of consecutive sentences for Daniels's convictions was permissive and not a departure from the guidelines, the district court did not abuse its discretion in also imposing a durational departure. Therefore, we affirm.

**Affirmed.**